UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:19-cr-00029

**United States of America**

v.

**Tyreese Wayne Williams**

# ORDER

The court now considers defendant's motions in limine (Docs. 34-37), his motion to require the government to reveal agreements with fact witnesses (Doc. 38), and his motion to exclude evidence (Doc. 54). Each motion will be addressed separately.

**Motion in limine number 1 (Doc. 34)**

Defendant moves for the court to order the government not to refer to "any prior convictions, alleged violations of the law, or any alleged extraneous acts or prior alleged acts of misconduct by the Defendant, in the presence of the Jury or Jury Panel, until a hearing has been held outside the presence of the Jury or Jury Panel" to determine whether such evidence is admissible. Doc. 34 at 1-2. The requested order would be premature. Federal Rule of Evidence 404(b)(2) provides that, "on request by a defendant in a criminal case, the prosecutor must . . . provide reasonable notice of the general nature of any . . . evidence" of the defendant's past crimes, wrongs, or other acts that the prosecutor plans to use at trial. Fed. R. Evid. 404(b)(2). This notice must occur before trial unless the court finds good cause for the prosecution's failure to provide that notice before trial. Fed. R. Evid. 404(b)(2)(B). The notice gained through this process would enable defendant to contest any evidence that he believes to be inadmissible. Therefore, this motion in limine (Doc. 34) is **denied**.

**Motion in limine number 2 (Doc. 35)**

This motion makes three requests. First, defendant requests the court to order the government not to ask the defendant, in the presence of the jury, to "stipulate to any testimony, whether it be the qualification of an expert or otherwise." Doc. 35 at 2. Second, defendant asks the court to order the government not to refer to or elicit testimony regarding any statement made by defendant that was not disclosed to defendant during discovery unless the government "without first taking the matter up outside the presence of the Jury to ascertain whether or not such statement is admissible and meets the Federal Constitutional test set out in *Jackson v. Denno* or *Miranda v. Arizona*." Doc. 35 at 2. Third, defendant requests "[t]hat the Government or any member of his/her staff be instructed not to elicit from any witness, evidence submitted under Federal Rules of Evidence 402, 403, 405, 406, and 408, or any reputation testimony concerning the accused without first allowing the Defendant's attorney, outside the presence of the Jury, an opportunity to question the competency of such witness to ascertain if he/she possesses the legal qualifications to so testify."

Except in limited circumstances, whether to conduct preliminary hearings on the admissibility of evidence outside the presence of the jury is left to the judge's discretion. *See* Fed. R. Evid. 104(c). Much evidence on preliminary questions may be heard by the jury with no adverse effect. Fed. R. Evid. 104 advisory committee's note on 1972 proposed rule. Further, evidence relevant to admissibility is often also relevant to weight or credibility, thus setting the foundation in the presence of the jury saves time. *Id.* Accordingly the court finds these requests overbroad or premature, and therefore, this motion in limine (Doc. 35) is **denied**.

**Motion in limine number 3 (Doc. 36)**

Defendant argues that the government should be precluded from referring to or eliciting testimony regarding any statements, admissions, or confessions of defendant until the court has held a hearing to determine whether those

confessions were voluntary. This motion in limine (Doc. 36) is **denied** as overbroad.

### Motion in limine number 4 (Doc. 37)

Defendant argues that the government should be precluded from eliciting expert testimony without first holding a hearing outside the presence of the jury to determine the expert's qualifications. This motion (Doc. 37) is **denied** as overbroad.

### Motion to require the government to reveal any agreement(s) entered into with fact witnesses (Doc. 38)

Defendant moves for the court to compel the government to disclose any agreement the government has entered into with a witness to provide a benefit to the witness in exchange for the witness's testimony. The government has an obligation to disclose agreements it makes to secure testimony from witnesses. *See Giglio v. United States*, 405 U.S. 150 (1972). But defendant does not identify any specific alleged agreements that the government has failed to disclose. Instead, defendant speculates that the government might have made an undisclosed agreement with a fact witness. This motion (Doc. 38) is **denied** as overbroad. This ruling on a motion in limine does not, of course, negate the prosecution's *Giglio* obligations.

### Motion to exclude evidence and response to pretrial order (Doc. 54)

Defendant raises several objections to the recordings from Officers Dickerson and Samford's body cameras, dash cameras, and dispatch audio, the recordings of three phone calls defendant made from jail, and the transcripts the government prepared of all these recordings.

### I.      Authentication of recordings

Defendant moves to exclude all recordings on the ground that the government has not yet authenticated them. Doc. 54 at 6-7 ¶ 4, 12 ¶ 2. Additionally, defendant moves to exclude all recordings from Dickerson's cameras or radio transmission on the ground that Dickerson, who has died, is unavailable to authenticate them. Doc. 54 at 9 ¶ 1. Defendant's motions to exclude this evidence are **denied** as overbroad and premature, without prejudice to defendant's right to object at trial should the government fail to authenticate any recordings.

### II.     Transcripts

Defendant moves to exclude the government's transcripts of the various recordings on several grounds. First, defendant argues that transcripts are unnecessary for understanding the audio/visual recordings because the recordings are audible, they cover only one event, and they feature only a small number of speakers. Doc. 54 at 7-8 ¶ 2. The government argues that recordings need not fall below some threshold of audibility or clarity to justify the admission of a transcript. Doc. 55 at 7. As the government notes, the Fifth Circuit has indicated that the rule is exactly the opposite: transcripts should not be admitted for recordings that fall below a threshold of audibility or clarity because jurors who cannot hear or understand the recording may rely too heavily on the transcript. *United States v. Chaney*, 299 Fed. App'x 447, 453-54 (5th Cir. 2008). The court is persuaded by the government's briefing on this point.

Next, defendant objects to the transcripts on procedural grounds. Defendant argues that the government has not given defense counsel the opportunity to submit the recordings to a transcription service for the purpose of preparing an alternative transcript. Doc. 54 at 8 ¶ 3. Defendant also argues

that the government failed to disclose its possession of recordings from Deputy Jacob Samford's devices until after Deputy Dickerson died. Doc. 54 at 10-11 ¶ 1. Furthermore, defendant asks the court to order the government to produce recordings of the jailhouse telephone calls so defendant may arrange for the production of alternative transcripts. Doc. 54 at 12 ¶ 1.

The government has a satisfactory response to all these complaints. Deputy Dickerson's recordings and the recordings of the jail telephone calls were made available to Williams's counsel through USAfx, the DOJ's online portal, when he joined the case in October 2019. Doc. 55 at 13-14. Likewise for the jailhouse telephone calls. *Id.* at 14. Deputy Samford's recordings were made available to defense counsel on January 6, 2020. *Id.* at 11.

Even if the government was obligated to disclose Samford's recordings before Dickerson died, suppression of evidence would be unwarranted. In the Fifth Circuit, "[t]he following factors should guide a district court's exercise of its discretion to impose sanctions for a discovery violation: '(1) the reasons why disclosure was not made; (2) the amount of prejudice to the opposing party; (3) the feasibility of curing such prejudice with a continuance of the trial; and (4) any other relevant circumstances.'" *United States v. Dvorin*, 817 F.3d 438, 453 (5th Cir. 2016) (quoting *United States v. Garrett*, 238 F.3d 293, 298 (5th Cir. 2000)). Here, the reason for the government's failure to disclose Samford's recordings at the outset was that, before Dickerson died, the government planned to rely on Dickerson's recordings at trial. There is no prejudice to defendant because Samford's recordings were disclosed to defendant in January and consist mostly of the same material that is on Dickerson's recordings, and defendant has not requested a continuance based on the disclosure of Samford's recordings. Doc. 55 at 11-12. The court is persuaded by the government's reasoning. Therefore, defendant's motions to

exclude the transcripts on the basis of the government's supposed failures to adequately disclose are **denied**, and defendant's motion to compel the government to supply audio recordings of the jailhouse telephone calls is similarly **denied**.

Finally, defendant argues that, if the transcripts are admitted, the court should issue a limiting instruction that the transcripts are to be used only to aid the jury in understanding the audio recordings. Doc. 54 at 8-9 ¶ 4. In response, the government "agrees that a transcript is an aid to a jury subservient to the jury's own discernment of what is contained in a recording" and the government also "stipulates that the Fifth Circuit Pattern Criminal Jury Instruction § 1.48 (2019) is the appropriate limiting instruction for transcripts." Doc. 55 at 8. Defendant has not proposed a specific limiting instruction or indicated his position as to the appropriateness of the pattern jury instruction. *See* Doc. 54 at 8-9 ¶ 4. Therefore, defendant's motion in limine for a limiting instruction is **deferred**. Defendant may, of course, propose a limiting instruction at trial.

### III.   Confrontation Clause

Defendant "objects to the use of any recorded testimonial statement by Deputy Dickerson." Doc. 54 at 9 ¶ 2. The Confrontation Clause prohibits the use of testimonial statements by non-testifying witnesses unless those witnesses are unavailable and the defendant had a prior opportunity to cross examine them. *Crawford v. Washington*, 541 U.S. 36, 54 (2004). The Confrontation Clause bars such testimonial statements only for the purposes of establishing the truth of the matter asserted. *Id.* at 59 n. 9. Here, Dickerson is a non-testifying witness, as he was killed prior to trial. Thus, any testimonial statements made by Dickerson are inadmissible for the purpose of establishing the truth of the matter asserted unless defendant had a prior opportunity to cross-examine Dickerson. For the reasons stated below, the court finds that the following statements are testimonial:

> DICKERSON: Oh, here's a gun. He's got a gun.
>
> . . .
>
> DICKERSON: Oh, shit. He's a convicted felon, too. 320 SO, firearm recovered.

Doc. 54-2 at 42, lines 7-11. The government, of course, remains free to attempt to establish those facts by other means.

Testimonial statements include affidavits, statements made during custodial examinations, confessions, depositions, prior testimony, and other "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 51-52. Thus, testimonial statements include statements made during an interrogation as well as "volunteered testimony." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 316 (2009) (quoting *Davis*, at 822-23 n.1). And testimonial statements may be sworn or unsworn. *Crawford*, 541 U.S. at 52 n.3. Ultimately, a statement is testimonial if "in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Ohio v. Clark*, 576 U.S. 237, 135 S. Ct. 2173, 2180 (2015). An important consideration in this analysis is the "prospect of fabrication." *See, e.g., United States v. Solorio*, 669 F.3d 943, 954 (9th Cir. 2012) (quoting *Michigan v. Bryant*, 562 U.S. 344, 361 (2011)).

A statement made while officers are responding to an ongoing emergency is likely to be deemed non-testimonial because "the prospect of fabrication in statements given for the primary purpose of resolving that emergency is presumably significantly diminished." *Bryant*, 562 U.S. at 361. The prospect of fabrication is also low where police officers make statements to other officers about ongoing events while they are conducting an undercover operation. *Soloria*, 669 F.3d at

954. The formality of the situation bears on this analysis because informal statements are less likely to be made for the primary purpose of establishing evidence against the defendant. *Clark*, 135 S. Ct. at 2180. Hearsay rules are relevant because they are "designed to identify some statements as reliable." *Id.* (quoting *Bryant*, 562 U.S. at 358-59.) But some statements that are admissible under a hearsay exception may be inadmissible under the Confrontation Clause due to the "unique potential for prosecutorial abuse" that arises from the "[i]nvolvement of government officers in the production of testimony with an eye toward trial." *Crawford*, 541 U.S. at 56 n.7. Consequently, statements are more likely to be testimonial when the speaker is a police officer cataloguing his observations and discoveries during a criminal investigation. *See Bullcoming v. New Mexico*, 564 U.S. 647, 660 (2011) ("Suppose a police report recorded an objective fact . . . Could an officer other than the one who saw the number on the house or gun present the information in court . . . the answer is emphatically 'No.'").

In the above quoted statements, Dickerson said that Williams had a gun and that Williams was a convicted felon. Dickerson made these statements while he and Samford—two police officers—were searching Williams's car and reporting what they found to other law enforcement agents over the radio. Williams had already been handcuffed and given *Miranda* warnings. Thus, Dickerson knew that his statements could potentially be used in a future criminal trial against Williams. And the situation presented the heightened risk involved when officers investigating a suspected crime scene may be able to plant evidence. Weighing all circumstances, the court finds that one primary purpose of the statements at issue was to establish facts that would be used against Williams in a criminal prosecution.

The government argues that the officers' purpose in searching Williams's car was to conduct an inventory search. Doc. 41 at 14-15. The court is persuaded that the search was probably done for two purposes: inventory and criminal investigation. The search of the car can be compared to an autopsy. Sometimes, the person performing an autopsy knows that her findings may be used in a criminal trial even though the autopsy is not performed "*solely* to gather evidence for use in a future prosecution." *United States v. Williams*, 740 F. Supp. 2d 4, 7 (D.D.C. 2010). An autopsy report is not testimonial where the autopsy was done long before a criminal investigation began, and the medical examiner did not suspect that the dead person had been murdered. *United States v. James*, 712 F.3d 79, 99 (2d Cir. 2013). By contrast, where the body arrived at the medical examination with visible signs of physical assault, and the autopsy was attended by two criminal investigators, the autopsy report is testimonial. *Williams*, 740 F. Supp. 2d at 7. Here, Officer Dickerson searched Williams's car after Williams had been arrested for fleeing from the police, and Dickerson had already vocalized his suspicion that there was contraband in the car. So the court finds that one primary purpose of the statements was to memorialize facts for a criminal prosecution.

The court recognizes that Dickerson's statements bear few, if any, of the traditional indicia of formality. And the hearsay exception for present-sense impressions applies. But these observations are overridden by the fact that Dickerson and Samford were police officers investigating a crime scene and reporting what they found over the radio to other law-enforcement agents.

For the reasons stated above, the above quoted statements are testimonial under the Confrontation Clause. Thus, these statements are inadmissible for showing the truth of the

matter asserted unless defendant had a prior opportunity to cross examine Dickerson.

### IV. Other evidentiary objections.

Williams objects to Dickerson's comment that, "Oh shit! He's a convicted felon too," on the additional ground that it is an impermissible reference to defendant's previous crimes, wrongs, or other acts under FRE 404(b). Doc. 54 at 10 ¶ 4. The government notes that Williams already stipulated to the fact that he was a felon at the time he was arrested for being a felon-in-possession of a firearm. Doc. 55 at 9-10 (citing Doc. 39). Moreover, the government points to FRE 404(b), which prohibits a reference to defendant's past crimes only if the reference is made for the purpose of showing that the defendant acted in conformity with some specified character trait. Fed. R. Evid. 404(b)(1). A reference to defendant's past crimes may be introduced for another purpose. Fed. R. Evid. 404(b)(2). Here, the government says it will introduce this quote for the "purpose of providing context to why Deputies Dickerson and Samford seized the firearm as evidence at the time it was discovered." Doc. 55 at 10. But the government does not explain why the officers' reasons for seizing the gun after they discovered it are relevant to the elements of the offense in this case. Therefore, defendant's motion to exclude this quote is **granted**.

Williams moves to exclude all transcripts and recordings from Dickerson and Samford's body cameras, dash cameras, and dispatch audio as "inadmissible hearsay to which no exception applies." Doc. 54 at 10 ¶ 2, 11 ¶ 2. The government argues that Dickerson and Samford's statements are present-sense impressions because they were "(1) dictating [their] actions to the dispatcher, (2) communicating with assisting officers about the ongoing pursuit and arrest, and (3) contemporaneously describing [their] actions as [they] performed them." Doc. 41 at 20-21 (citing Fed. R. Evid. 803(1)) Moreover,

the government says, "the 'contemporaneous' element should be broadly applied and should be interpreted to include descriptions of the immediate past." *Id.* at 22-23 (citing *United States v. Davis*, 577 F.3d 660, 668-69 (6th Cir. 2009) (description provided in a 911 call 30 seconds to a minute after the events described counts as a present sense impression)). The court agrees that the vast majority of the statements in these recordings escape the hearsay rule as present-sense impressions. *See United States v. Polidore*, 690 F.3d 705, 720 (5th Cir. 2012) (descriptions of drug deal made by 911 caller who was watching it happen were present-sense impressions). The remaining statements are statements of the party opponent or verbal actions. Therefore, defendant's motion to exclude these transcripts and recordings on hearsay grounds is **denied**.

Defendant moves to exclude all recordings and transcripts from Dickerson and Samford's body cameras, dash cameras, and dispatch audio as "irrelevant, prejudicial, needlessly cumulative and wasteful of time." Doc. 54 at 10 ¶ 3, 11 ¶ 2. The court finds that some portions of these transcripts are inadmissible under FRE 403. Those portions that are inadmissible on these grounds are listed in the chart below. Where this chart indicates that a quotation is inadmissible, that quotation is inadmissible in every recording and transcript in which it appears, even if not all recordings and transcripts are included in this chart.

Defendant moves to exclude the jailhouse phone calls as hearsay to which no exception applies and as "irrelevant, prejudicial, confusing, needlessly cumulative and wasteful of time." Doc. 54 at 12 ¶ 2. The government argues that the phone calls are admissible as the statement of a party opponent under Fed. R. Evid. 801(d)(2). The statements on the telephone calls by Williams's interlocutors are admissible to add context to Williams's own statements. Doc. 55 at 5 (citing *United States v. Chaney*, 299 Fed. App'x. 447, 452 (5th Cir.

2008)). The court finds that some portions of the transcripts and calls are inadmissible as hearsay and under FRE 403. Those portions that are inadmissible on these grounds are listed in the chart below. Where this chart indicates that a quotation is inadmissible, that quotation is inadmissible in every recording and transcript in which it appears, even if not all recordings and transcripts are included in this chart.

| Location | Text | Ruling |
|---|---|---|
| Doc. 54-2 at 18-19 (lines 16:2-17:25) | WILLIAMS: Hey.<br>DICKERSON: What's up?<br>WILLIAMS: Hey get me to the hospital, man. Hey man, I took [unintelligible].<br>DICKERSON: You what?<br>WILLIAMS: I took some [unintelligible] he gave me some [unintelligible].<br>DICKERSON: He gave you some shit?<br>WILLIAMS: [Unintelligible].<br>DICKERSON: [redacted]<br>WILLIAMS: I don't know. I ain't gon' lie to you, that man gave me some shit, man.<br>DICKERSON: What'd he give you? Meth, cocaine, heroin, bad weed? I don't know, what?<br>WILLIAMS: Motherfucker gave me some meth, man.<br>DICKERSON: Meth?<br>WILLIAMS: Yeah, fuck.<br>DICKERSON: [redacted]<br>WILLIAMS: Nah, man.<br>DICKERSON: [redacted] | **Inadmissible.** FRE 403 (prejudicial, wasteful of time). |

| Location | Text | Ruling |
|---|---|---|
| | WILLIAMS: Bro, I ain't got no pipe. Hey, can you take me to the hospital?<br><br>DICKERSON: [redacted]<br><br>WILLIAMS: I'm trying to hold my— That man gave me some fucked up shit. I really… can't [unintelligible]. Man, he gave— He tried to give her… a damn couple shit. Some shit.<br><br>DICKERSON: [redacted]<br><br>WILLIAMS: Aye, I need to get to the emergency room. I know for a fact—<br><br>DICKERSON: [redacted]<br><br>WILLIAMS: I know for a fact that man gave me some shit.<br><br>DICKERSON: [redacted]<br><br>WILLIAMS: [unintelligible] | |
| Doc. 54-2 at 20 (lines 5-7), 65 (lines 11-13) | WILLIAMS: "Uh, I mean last time y'all had issues. I mean they search it every time. [Unintelligible] five, six times. I mean – " | **Inadmissible.** FRE 403 (confusing, prejudicial). |
| Doc. 54-2 at 20 (lines 18:10-25) | WILLIAMS: Man, I need— I know that that— I know that I'm not right, right now. I know I need to go…<br><br>DICKERSON: [redacted]<br><br>WILLIAMS: Alright, I totally appreciate everything.<br><br>DICKERSON: [redacted]<br><br>WILLIAMS: Yes.<br><br>DICKERSON: [redacted]<br><br>WILLIAMS: Mm. [Unintelligible].<br><br>DICKERSON: [redacted]<br><br>WILLIAMS: Yeah, might be. | **Inadmissible.** FRE 403 (prejudicial, wasteful of time). |

| Location | Text | Ruling |
|---|---|---|
| Doc. 54-2 at 21 (lines 19-3-8) | WILLIAMS: Nah, there shouldn't be nothing in that car, man.<br><br>DICKERSON: [redacted]<br><br>WILLIAMS: I mean... y'all already done searched it [unintelligible]. | **Inadmissible.** FRE 403 (prejudicial). |
| Doc. 54-2 at 21-22 (lines 19:13-20:16) | WILLIAMS: No, I'm not talking about the past or nothing, man. I'm not talking about nothing. I need— I need— I'm talking from you to me, that man really gave me—<br><br>DICKERSON: [redacted]<br><br>WILLIAMS: I'm scared than a motherfucker.<br><br>DICKERSON: [redacted]<br><br>WILLIAMS: I'm not messed up like that, man. That man gave me some shit, man, got me fucked up.<br><br>DICKERSON: [redacted]<br><br>WILLIAMS: No, man, it ain't— it ain't nothing like that. It's just, man, the shit… I'm in the right state of mind, if I'm not in the right state of mind I wouldn't [unintelligible].<br><br>DICKERSON: [redacted]<br><br>WILLIAMS: "The man tried— I mean, [unintelligible]. I don't even… bro. This is like, real live like motherfucking… you know what I'm saying? You wanna just know— This girl Laura— All this shit! Every time I got pulled over, and some motherfucker seen me get pulled over [unintelligible] you know what I'm saying? Every time— I got pulled over four or five times, you got to [unintelligible], you know what I'm saying?" | **Inadmissible.** FRE 403 (prejudicial). |

- 14 -

| Location | Text | Ruling |
| --- | --- | --- |
| Doc. 54-2 at 23-24 (lines 21:11-22:12) | WILLIAMS: You ain't got no probable reason to search that car.<br><br>DICKERSON: [redacted]<br><br>WILLIAMS: There's no probable— It's no probable cause to search that car, man.<br><br>DICKERSON: [redacted]<br><br>WILLIAMS: Nah, I don't even want my car. You know, they gon' get a warrant.<br><br>DICKERSON: [redacted]<br><br>WILLIAMS: They— Bro, I'm—<br><br>DICKERSON: [redacted]<br><br>WILLIAMS: I need a warrant. I know the law. I need a warrant.<br><br>DICKERSON: [redacted]<br><br>WILLIAMS: I'm over here about to [unintelligible] pass out. I'm telling you I'm sick.<br><br>DICKERSON: [redacted]<br><br>WILLIAMS: You need a warrant. Hell, you gotta get a warrant to take that motherfucker. Fuck this shit. I [unintelligible] on me like that. Damn, I can't even goddamn get a job, nothing. [Unintelligible] everywhere I go. | **Inadmissible** under FRE 403 (prejudicial). |
| Doc. 54-2 at 42 (lines 12:7-11) | DICKERSON: Oh, here's the gun. He's got a gun.<br><br>SAMFORD: Let me see it while you finish up [unintelligible].<br><br>DICKERSON: Oh shit. He's a convicted felon, too.<br><br>SAMFORD: [Unintelligible].<br><br>DICKERSON: 320 SO, show firearm recovered. | **Inadmissible**. Confrontation Clause and FRE 404(b). |

| Location | Text | Ruling |
|---|---|---|
| Doc. 54-2 at 28-30 (26:23-28-4) | WILLIAMS: Hey, man, you gon' take me to the emergency room?<br><br>SAMFORD: Do what?<br><br>WILLIAMS: You gon' take me to the emergency room?<br><br>SAMFORD: I can't hear you. Do what now?<br><br>WILLIAMS: Are you going to take me to the emergency room?<br><br>SAMFORD: What do you need to go to the emergency room for?<br><br>WILLIAMS: Told you, man. Dude gave me some shit [unintelligible].<br><br>SAMFORD: Huh?<br><br>WILLIAMS: I told Chris that man gave me some— I don't what that shit is.<br><br>SAMFORD: Who did?<br><br>WILLIAMS: That man, [unintelligible].<br><br>SAMFORD: Who?<br><br>WILLIAMS: Hey, man…<br><br>SAMFORD: I don't know, man. I'm taking you to the county jail.<br><br>WILLIAMS: Nah, I need the emergency room, bro. I ain't…<br><br>SAMFORD: You didn't feel light-headed 20 minutes ago when you was running from us.<br><br>WILLIAMS: I know I'm scared as a mother-fucker. I know need to go to the emergency room.<br><br>SAMFORD: Alright.<br><br>WILLIAMS: [Unintelligible]. | **Inadmissible.** FRE 403 (prejudicial). |

| Location | Text | Ruling |
|---|---|---|
| | SAMFORD: 322 SO, you can go ahead and show me 75 one time. One black male for 320, gonna be in route to 101.<br><br>DISPATCH: 10-4. | |
| Doc. 54-1 at 4-5 (lines 2:25-3:1). | FEMALE: So, how were you evading arrest? You must have been speeding. | **Inadmissible.** FRE 403 (prejudicial, low probative value). |
| Doc. 54-1 at 5 (lines 3:7-10). | WILLIAMS: Mama, I can't keep on getting pulled— I get pulled over four, five times. You see— You see what happened [unintelligible]. | **Inadmissible**. FRE 403 (prejudicial). |
| Doc. 54-1 at 5-6 (lines 3:23-4:1). | FEMALE: I ain't finna say nothing because I— I— I knew they was gonna finally get you Ty. 'Cause you wasn't— you just didn't act right. | **Inadmissible**. FRE 802 and 403 (prejudicial, low probative value). |
| Doc. 54-1 at 6 (lines 4:10-25). | FEMALE: I don't know nothing about what's going on. I don't— You just done messed yourself up.<br><br>WILLIAMS: How? No, I ain't.<br><br>FEMALE: Yes, you have.<br><br>WILLIAMS: How I have?<br><br>FEMALE: Tyreese, that's a—a felony against you again with that gun. You done messed yourself up. Can't nobody— Can't nobody talk—<br><br>WILLIAMS: [Unintelligible].<br><br>FEMALE: Can't nobody talk to you or nothing.<br><br>WILLIAMS: No, 'cause ain't nobody saying— You ain't list— You ain't paying attention. You can think about it. Them people pulled me over [unintelligible]. | **Inadmissible**. FRE 802. |

| Location | Text | Ruling |
| --- | --- | --- |
| Doc. 54-1 at 6-8 (lines 5:1-6:2). | FEMALE: You don't see the point? You ain't say nothing.<br><br>WILLIAMS: I can't talk to you 'bout— [Mumbling] Every time I try talk to y'all 'bout something y'all ain't gonna understand what's really going on.<br><br>FEMALE: Well, I don't— I don't know what to say.<br><br>WILLIAMS: [Stutters] I mean, I'm just— I— I mean, I'm like by myself.<br><br>FEMALE: You just— you just accusing folks of stuff, it just doesn't even make sense.<br><br>WILLIAMS: I ain't— Nah. Mama, you ain't listening to what's going on, what I'm saying. As far as me, you ain't understanding. You— I mean [unintelligible]—<br><br>FEMALE: Tyreese! How am I going to understand anything when I don't know nothing?<br><br>WILLIAMS: That's what I'm saying, you ain't trying to know nothing.<br><br>FEMALE: Well, I can't help you. I'm sorry.<br><br>WILLIAMS: I know that. That's what—<br><br>FEMALE: I wish you— All I wish [unintelligible] came home and did what you supposed to [unintelligible] done.<br><br>WILLIAMS: That's what you wanted, ain't it?<br><br>FEMALE: What? | **Inadmissible**. FRE 802 and 403 (prejudicial, wasteful of time, low probative value). |
| Doc. 54-1 at 10 (lines 8:5-14). | FEMALE: First Time Bail Bonds.<br><br>WILLIAMS: Uh, yes, this is Tyreese. Did y'all get in touch with them? | **Inadmissible**. FRE 403 (prejudicial) and FRE 802. |

| Location | Text | Ruling |
|---|---|---|
| | FEMALE: Uh, yes, but she said that she's gonna call your mom 'cause she said that you—that she doesn't know if you're lying about having that much money on your credit card.<br><br>WILLIAMS: [Laughs] Yeah.<br><br>FEMALE: Yeah. So, we're waiting on your mom. | |
| Doc. 54-1 at 11 (lines 2:16-22) | ANITA: Nobody's gon' get anything out [unintelligible].<br><br>FEMALE: Uh, Ms. Anita said that nobody's gonna be able to get anything out.<br><br>ANITA: [Unintelligible].<br><br>FEMALE: We need to find someone that can like, make a down payment, and— | **Inadmissible**. FRE 802. |

## Conclusion

For the reasons stated above, defendant's motions in limine numbers 1-4 and his motion to require the government to reveal agreements with fact witnesses (Docs. 34-38) are **denied**. Defendant's motion to exclude evidence (Doc. 54) is **granted-in-part**, **denied-in-part**, and **deferred-in-part**.

*So ordered by the court on August 21, 2020.*

J. CAMPBELL BARKER
United States District Judge